### RUTHERFURD v. CARPENTER.

(Supreme Court, Appellate Division, First Department. December 3, 1909.)

1. Trusts (§ 35*)—Express Trust—Agreement Between Testator and Legatee.

Where a testator is induced either to make a will, or not to change one theretofore made, by a legatee's promise, express or implied, that he will devote his legacy to a certain lawful purpose, a secret trust is created, which will be enforced in equity by compelling the legatee to perform the promise.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 47; Dec. Dig. § 35.*]

2. TRUSTS (§ 35*)—RESIDUARY LEGATEE—PROMISE TO APPLY TO PART OF THE LEGACY.

Testatrix made a will, giving a legacy to her cousin, and giving $20,000 to defendant, who was her executor, residuary legatee, and business adviser. The cousin having died prior to testatrix, she wrote defendant, asking him to get the will, of which he had possession, and strike out the cousin, inserting plaintiff's name instead. Defendant made no reply, but shortly after testatrix's death wrote to his attorney, stating that testatrix quite recently had informed him that she wished the cousin's legacy to be paid to plaintiff, and that the attorney should advise plaintiff thereof, which was done. Shortly thereafter defendant delivered to plaintiff certain articles of personal property, which testatrix desired he should have in accordance with a schedule left by her, and, referring to the legacy, stated "that had been expressed earlier," and to plaintiff's wife, on the day testatrix died, stated that her husband "was handsomely remembered in the will." Held, that defendant, as residuary legatee, took the residuum of the estate charged with a secret trust in favor of plaintiff to an amount equal to the lapsed legacy.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 47; Dec. Dig. § 35.*]

Ingraham and Laughlin, JJ., dissenting.

Appeal from Special Term, New York County.

Action by William Walton Rutherfurd against J. Herbert Carpenter. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

John S. Davenport, for appellant.

Henry Siegrist, Jr. (F. R. Mimath, on the brief), for respondent.

McLAUGHLIN, J. On the 24th of December, 1900, Mme. Sarah De Vaugrigneuse executed a last will and testament, by which, among other things, she gave a legacy of $10,000 to her cousin, Mrs. Isabella Rutherfurd, and one of $20,000 to the defendant, whom she made her executor, and also her residuary legatee. Mrs. Rutherfurd died on the 27th of July, 1903, and three days later the testatrix wrote a letter to the defendant, who had charge of her affairs, and knew the contents and was in possession of her will, in which, after calling attention to the death of Mrs. Rutherfurd, she, among other things, said:

"Now, remember, please, when you get hold of my will, to strike out Mrs. Rutherfurd, inserting instead name of Rev. W. W. Rutherfurd, and do it as soon as legality permits."

Rev. W. W. Rutherfurd, referred to in the letter, is the plaintiff in this action. Mme. De Vaugrigneuse died on the 22d of April, 1904, without having executed another will, or a codicil to the one theretofore made. Shortly after her death the defendant wrote a letter to his attorney, in which he said:

"Mme. De Vaugrigneuse quite recently informed me that it was her wish that the legacy mentioned in her will, to wit, $10,000 to Isabella Rutherford, should be paid to Rev. W. W. Rutherfurd, and that from her personal effects the articles enumerated below should be given him."

Here followed a list of the articles, and the letter concluded:

"Kindly advise Rev. William W. Rutherfurd of these facts."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A copy of this letter was forwarded to the plaintiff, and he subsequently received the articles specified; but the defendant declined to pay the legacy of $10,000 to him, and this action was brought to impress a trust for that amount on the residuary estate in the hands of the defendant, which it is admitted exceeds the amount of the legacy. The plaintiff had a judgment for the relief claimed, and defendant appeals.

The rule, at least so far as this state is concerned, seems to be settled that where a testator is induced either to make a will, or not to change one theretofore made, by a promise, either express or implied, on the part of a legatee that he will devote his legacy to a certain lawful purpose, a secret trust is created, which a court of equity will enforce by compelling such legatee to apply the property thus obtained in accordance with the promise made. O'Hara v. Dudley, 95 N. Y. 403, 47 Am. Rep. 53; Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305; Edson v. Bartow, 154 N. Y. 199, 48 N. E. 541. The question presented by this appeal is whether there was sufficient evidence to sustain the finding of the trial court that the defendant promised to pay to the plaintiff in this action the legacy of $10,000 given by the will to Mrs. Rutherfurd. Aside from the facts already stated, there was no evidence of such a promise, except that the defendant, after his attention had been called to a list left by the testatrix of articles which she desired to have given Mr. Rutherfurd and which did not refer to the $10,000 legacy, testified that as to that legacy "that had been expressed earlier"; and the plaintiff's wife testified that on the day the testatrix died, or the day before, he stated to her that her husband "was handsomely remembered in the will." I am of the opinion that the evidence, when all of it is considered, is sufficient to sustain the finding, and for that reason the judgment in favor of the plaintiff should be affirmed.

In O'Hara v. Dudley, supra, a testatrix gave the bulk of her estate to her lawyer, McCue, and two others, absolutely, but explained to them, by a letter of instructions contemporaneous with the will, that she wished them to devote her property to certain charitable uses. Judge Finch, who delivered the opinion of the court, said:

"The finding that Judge McCue 'made no promise to obtain the bequest or devise' cannot be sustained. If anything is rendered certain by the evidence, it is that the testatrix made the absolute devise and bequest upon the suggestion of a necessity therefor by Judge McCue, and upon the understanding that he and his associates would faithfully and honorably carry out her expressed intentions. If we say that McCue made no such promise, that he came under no such honorable obligation, then we must say that the testatrix was misled into a false belief, upon which, as true, she unmistakably acted; for it is not possible to doubt that if the legatees had said: 'We will not promise. We will do as we please. We will not be even honorably bound not to take this money for ourselves'—the absolute bequest would never have been made. It matters little that McCue did not make in words a formal and express promise. Everything that he said and everything that he did was full of that interpretation. * * * Where in such case the legatee, even by silent acquiescence, encourages the testatrix to make a bequest to him, to be by him applied for the benefit of others, it has all the force and effect of an express promise. Wallgrave v. Tebbs, 2 K. & J. 321; Schultz's Appeal, 80 Pa. 405. If he does not mean to act in accord with the declared expectation which underlies and

induces the devise, he is bound to say so; for his silent acquiescence is otherwise a fraud. Russell v. Jackson, 10 Hare, 204."

In Amherst College v. Ritch, supra, it was said on this subject:

"While a promise is essential, it need not be expressly made; for active cooperation or silent acquiescence may have the same effect as an express promise. If a legatee knows what the testator expects of him, and, having an opportunity to speak, says nothing, it may be equivalent to a promise, provided the testator acts upon it."

In the present case the fact cannot be disputed that the testatrix, when she made her will, did not intend that the legacy in question should ever be paid to the defendant, and it is equally clear that after the death of Mrs. Rutherfurd, to whom this legacy had been given in her will, she desired the same should be paid to the plaintiff. Her letter to the defendant not only shows this, but his letter to his attorney, immediately following the death of the testatrix, also shows it.

But it is suggested by counsel for the appellant that, when she wrote the letter to the defendant, she had already made her will, and such letter was but the expression of an intention to change it by substituting the plaintiff instead of her cousin, and there was no proof offered that she refrained from making such change because of any promise by the defendant that he would carry out her wish by paying the legacy to Mr. Rutherfurd. If the letter which she wrote to the defendant immediately after the death of Isabella were all the evidence, there would be force in this suggestion; but it is not. She left a list of the articles which she desired given to Mr. Rutherfurd, and, while the legacy is not included therein, the defendant himself, as already stated, testified, referring to it, "That had been expressed earlier." That there had been some understanding between him and the testatrix, shortly before her death, to the effect that this legacy would be paid to the plaintiff, is evidenced by the defendant's own letter to his attorney. In this letter he stated that she had "quite recently informed me that it was her wish that the legacy mentioned in her will, to wit, $10,000, to Isabella Rutherfurd, should be paid to Rev. Wm. W. Rutherfurd."

The confidential relation existing between the defendant and the testatrix must not be overlooked. He was the trustee under her father's will, of which she was the sole beneficiary, and was the one upon whom she relied and trusted in the management of her financial affairs. When she told him, therefore, that she wished the lapsed legacy paid to the plaintiff, he having possession of her will and knowing its contents, and as she had given him a legacy of $20,000, besides making him her residuary legatee, it was his duty, if he did not intend to comply with her wish and make the payment as she directed, to say so. He could not remain silent, and, after death had sealed her lips, say that he had never promised to carry out her wish, and by such silence take the $10,000 himself. Silence, under such circumstances, was equivalent to a promise to do what she wanted done.

When the will was executed, the testatrix was upwards of 70 years of age, and by reason of the defendant's intimate business relations with her he must have had some knowedge of her testamentary capa-

city. It may very well be that he did not deem it advisable, on account of her age and testamentary capacity, that she should, some three years thereafter, execute a new will or a codicil to the one theretofore made. And in this connection it is to be noted that admission of her will to probate was opposed upon the ground of lack of testamentary capacity. Whether this was the reason why the change was not made I do not consider important. The undisputed fact, as appears from the record, is that he knew what her wishes were as to the $10,000 legacy, that she had communicated such wish to him, and expected him to carry it out. To permit him, now, to defeat the expectation, would be to sanction the commission of a fraud.

It is suggested that, inasmuch as the plaintiff joined with the others in opposing the probate of the will, that ought to prevent a recovery; but in the settlement which was made the plaintiff expressly reserved his right to recover the legacy in question. I have been unable to reach any other conclusion than that $10,000 of the residuary estate now in the hands of the defendant is impressed with a secret trust in favor of the plaintiff. The defendant's silent acquiescence and tacit consent, at least, had all the force and effect of a promise solemnly made in the presence of witnesses. Edson v. Bartow, 154 N. Y. 218, 48 N. E. 541, supra. Whatever may have happened since the testatrix's death, plaintiff has the same right to collect the legacy as if it had been given him by an express trust in the will.

The judgment appealed from, therefore, should be affirmed with costs.

HOUGHTON and SCOTT, JJ., concur.

INGRAHAM, J. I dissent. This judgment is entered upon the twelfth finding of fact, which finds:

"That the defendant, upon the receipt of the letter set forth in the seventh finding, represented to the said Sarah Morris De Vaugrigneuse that her wishes in regard to the said $10,000 legacy would be respected and carried out by him."

The defendant had been the attorney for the testatrix, had prepared her will, and was the residuary legatee. On July 30, 1903, he received from her a letter stating that the testatrix had read of the death of a person to whom she had given a legacy of $10,000, and stating:

"Now, remember, please, when you get hold of my will, to strike out Mrs. Rutherfurd, inserting instead name of Rev. W. W. Rutherfurd, and do it as soon as legality permits."

This was the only representation or statement of the testatrix to the defendant proved. The testatrix lived nearly nine months after writing the letter and made no change in her will. It appeared that subsequently, on the 4th of March, 1904, the testatrix executed an instrument in which she stated that she desired that certain articles of personal property should be delivered to the plaintiff; but in that instrument there was no mention made of this $10,000 legacy. It seems to me that this finding is without the evidence to sustain it. The letter in question merely indicated an intention of the testatrix

to change her will and directed the defendant, who was her lawyer, to make such change. She never again referred to the matter, so far as appears in the record, and there is not the slightest evidence that the intention that she had in April, 1903, continued until her death. She apparently recognized that the legacy could not be paid to the plaintiff without a change in her will. She asked for no promise from the defendant to pay this legacy to the plaintiff, and no promise was ever given to her.

The statute prescribed certain formalities which must be complied with before a testamentary disposition of property can be enforced, and while the courts have enforced certain promises of a legatee as to the disposition of a legacy, where a failure to perform such a promise would have been a fraud upon both the testatrix and the person intended to be benefited by the testamentary disposition, a promise has never been implied, except under circumstances which left no doubt as to the intention of the testatrix and the conditions under which the legacy was given. In considering some of the cases upon which it is sought to sustain this judgment, the distinction is apparent. Thus in Matter of O'Hara, 95 N. Y. 403, 47 Am. Rep. 53, the court said that it was rendered certain by the evidence that the testatrix made the absolute devise and bequest upon the suggestion of a necessity therefor by one of the legatees, and upon the understanding that he and his associates would faithfully and honorably carry out her expressed intentions. The court said:

"For it is not possible to doubt that, if the legatees had said: 'We will not promise. We will do as we please. We will not even be honorably bound not to take this money for ourselves'—the absolute bequest would never have been made. It matters little that Mr. McCue did not make in words a formal and express promise. Everything that he said and everything that he did was full of that interpretation. * * * If he does not mean to act in accord with the declared expectation which underlies and induces the devise, he is bound to say so; for his silent acquiescence is otherwise a fraud."

And it was this same principle upon which Amherst College v. Ritch, 151 N. Y. 282, 45 N. E. 876, 37 L. R. A. 305, was decided.

Edson v. Bartow, 154 N. Y. 199, 48 N. E. 541, illustrates the distinction between a case where a promise by a legatee is made and one where there was no such promise. Mr. Parsons was held to have made a promise to carry out the wishes of the testatrix, because he drew the will, and was present at its execution, and acquiesced in the reason given for making the legacy direct to him, rather than to the beneficiaries that the testatrix intended; but as to those who were not present no such promise could be implied, and the legacy was upheld. In the absence of an express request of the defendant to pay this legacy to the plaintiff, or any representation or statement upon which the testatrix relied that the defendant would pay the legacy, or the existence of such a position that the defendant was bound to express his refusal or lead the testatrix to believe that he would comply with her request, I do not see how any promise can be implied. We simply have a letter declaring an intention to change her will, followed by no further request on the subject and no actual change of the will. The statement in the latter was not a direction to the defendant to

pay the legacy to the plaintiff, but a direction to the defendant, when he got hold of the will, to strike out the deceased legatee and insert the name of the plaintiff, and to do it as soon as legality permitted. There was no direction to the defendant to pay, no statement that he was expected to pay without a change of the will, simply a direction to change the will, which was never consummated. How it can be said that this implied a promise on behalf of the defendant to pay this legacy I cannot understand.

I think that the judgment should be reversed, and the complaint dismissed.

LAUGHLIN, J., concurs.